UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- :

R. ALEXANDER ACOSTA, Secretary of Labor,
United States Department of Labor,                                      :

                       Plaintiff,  :  **COMPLAINT**

              v.  :  Civil Action No. 17-cv-6974

YIANNA FOOD CORP. d/b/a WILLISTON TOWN                                  :
HOUSE DINER; DIMAS CORPORATION d/b/a OLD
WESTBURY DINER; DIMAS TOWER d/b/a TOWERS                                :
ON THE GREEN; SPIROS DIMAS, Individually and as
Officer; BAFTIJE DIMAS, Individually and as Officer;                    :
and NADZIJE DIMAS, Individually,

                     Defendants.                                :

----------------------------------------------------------------------- :

## **PRELIMINARY STATEMENT**

      1.      Plaintiff, R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor ("the Secretary"), by and through undersigned counsel, brings this action under Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, *et seq.*) ("the Act" or "the FLSA"), alleging that Defendants violated Sections 7 and 11(c) of the Act to recover back wages and liquidated damages, to enjoin acts and practices which violate the provisions of the FLSA, and to obtain other appropriate relief.

      2.      Defendants operate three related restaurants in Nassau County. But while these restaurants strive to cultivate what one restaurant's website terms "a cozy and welcoming atmosphere" for customers, Defendants are not nearly so solicitous of their own workers. As set forth herein, and as documented on Defendants' electronic payroll systems, Defendants' bussers, dishwashers, and cooks regularly worked dozens of hours of overtime each week. However,

despite employees' long hours of work, Defendants paid these employees only flat salaries, with no additional compensation for overtime hours.

3. The restaurants undertook various schemes to hide how many hours its employees were working and their failure to pay overtime. During much of the time at issue, Defendants simply failed to keep any records whatsoever regarding the hours worked or wages paid to many of their employees. But during the roughly one year period where each of the restaurants did maintain records of hours worked and wages paid at each of the Diners, Defendants crafted elaborate falsified documents designed to simulate compliance with the Act, while actually evading the law.

## JURISDICTION AND VENUE

4. Jurisdiction over this action is properly conferred upon this Court by Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

5. Venue is proper in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

### The Parties

*Plaintiff*

6. Plaintiff, R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and to recover back wages and liquidated damages, and is the proper plaintiff for this action.

*Corporate Defendants*

7. Defendant YIANNA FOOD CORP. d/b/a WILLISTON TOWN HOUSE DINER ("WILLISTON") is a domestic business corporation duly organized under the laws of the State of New York.

8. Defendant WILLISTON is engaged in the operation of a full service diner restaurant located at 112 Hillside Avenue, Williston Park, New York 11596, within the jurisdiction of this Court.

9. Defendant WILLISTON, at all relevant times, has regulated the employment of all persons employed by it, acted directly and indirectly in the company's interest in relation to the employees, and thus is an employer of employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10. Defendant DIMAS CORPORATION d/b/a OLD WESBTURY DINER ("OLD WESTBURY") is engaged in the operation of a full service diner restaurant located at 4 Glen Cove Road, Old Westbury, NY 11568, within the jurisdiction of this Court.

11. Defendant OLD WESTBURY, at all relevant times, has regulated the employment of all persons employed by it, acted directly and indirectly in the company's interest in relation to the employees, and is thus an employer of employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

12. Defendant DIMAS TOWER INC. d/b/a TOWERS ON THE GREEN ("TOWERS") is engaged in the operation of a full service diner restaurant located at 27248 Grand Central Parkway, Floral Park, NY 11005, within the jurisdiction of this Court.

13. Defendant TOWERS, at all relevant times, has regulated the employment of all persons employed by it, acted directly and indirectly in the company's interest in relation to the

employees, and is thus an "employer" of employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

### *Individual Defendants*

14. Members of the Dimas Family—Spiros, his wife Batfije, and their daughter Nadzije—own and operate the Diners.

15. Defendant SPIROS DIMAS is the owner and President of OLD WESTBURY.

16. Defendant SPIROS DIMAS is also owner and President of TOWERS.

17. While SPIROS DIMAS does not technically own WILLISTON, he nonetheless actively controls and manages that diner.

18. Likewise, Defendant SPIROS DIMAS is in active control and management of OLD WESTBURY and TOWERS.

19. Defendant SPIROS DIMAS oversees and regularly visits the Diners.

20. Defendant SPIROS DIMAS has authority to hire and fire employees at the Diners.

21. Defendant SPIROS DIMAS makes hiring and firing decisions at the Diners.

22. Defendant SPIROS DIMAS has authority to supervise employees at the Diners.

23. Defendant SPIROS DIMAS exercises his authority to supervise employees at the Diners.

24. Defendant SPIROS DIMAS has authority to discipline employees at the Diners.

25. Defendant SPIROS DIMAS exercises his authority to discipline employees at the Diners.

26. Defendant SPIROS DIMAS has authority to determine employee pay at the Diners.

27. Defendant SPIROS DIMAS exercises his authority to determine employee pay at the Diners.

28. Defendant SPIROS DIMAS has regulated the employment of all persons he has employed and has acted directly and indirectly in the Diners' interests in relation to the employees. Defendant SPIROS DIMAS is thus an employer of the Diners' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the meaning of Section 3(a) of the Act, 29 U.S.C. § 203(a).

29. Defendant BAFTIJE DIMAS is the owner and Chief Executive Officer of WILLISTON.

30. Defendant BAFTIJE DIMAS is Chief Executive Officer of OLD WESTBURY.

31. Defendant BAFTIJE DIMAS shares active control and management of the Diners with SPIROS DIMAS.

32. Defendant BAFTIJE DIMAS has authority to discipline employees at the Diners.

33. Defendant BAFTIJE DIMAS exercises her authority to discipline employees at the Diners.

34. Defendant BAFTIJE DIMAS has authority to supervise employees at the Diners.

35. Defendant BAFTIJE DIMAS exercises her authority to supervise employees at the Diners.

36. Upon information and belief, BAFTIJE DIMAS has authority to hire and fire employees at the Diners.

37. Upon information and belief, BAFTIJE DIMAS exercises her authority to hire and fire employees at the Diners.

38. Defendant BAFTIJE DIMAS has regulated the employment of all persons she has employed and has acted directly and indirectly in the Diners' interests in relation to the employees. Defendant BAFTIJE DIMAS is thus an employer of the Diners' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the meaning of Section 3(a) of the Act, 29 U.S.C. § 203(a).

39. Defendant NADZIJE DIMAS is the daughter of SPIROS DIMAS and BAFTIJE DIMAS.

40. Defendant NADZIJE DIMAS is a manager at OLD WESTBURY.

41. Defendant NADZIJE DIMAS manages payroll at OLD WESTBURY.

42. Defendant NADZIJE DIMAS distributes pay to employees at OLD WESTBURY.

43. Defendant NADZIJE DIMAS oversees operations at OLD WESTBURY.

44. Defendant NADZIJE DIMAS has authority to supervise employees at OLD WESTBURY.

45. Defendant NADZIJE DIMAS exercises her authority to supervise employees at OLD WESTBURY.

46. Defendant NADZIJE DIMAS has authority to discipline employees at OLD WESTBURY.

47. Defendant NADZIJE DIMAS exercises her authority to supervise employees at OLD WESTBURY.

48. Defendant NADZIJE DIMAS has regulated the employment of all persons she has employed and has acted directly and indirectly in OLD WESTBURY's interests in relation to the employees. Defendant NADZIJE DIMAS is thus an employer of OLD WESTBURY's

employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the meaning of Section 3(a) of the Act, 29 U.S.C. § 203(a).

## Defendants Are an Enterprise Engaged in Commerce

49. The business activities of Defendants, as described herein, are related and performed through common control for a common business purpose and constitute an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

50. Upon information and belief, each of the Diners has had an annual gross volume of sales made or business done in an amount not less than $500,000 for the relevant time period covered by this Complaint.

51. Each of the Diners has employees handling, selling, and working on goods or materials that have been moved or produced for commerce such as condiments, food, beverages, kitchen appliances, and cookware, and each of the Diners has employees who regularly process interstate electronic credit card payments. Therefore, the Diners' employees are employed in an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

## Defendants' Unlawful Pay Practices

52. At all times relevant to this Complaint, Defendants employed several types of employees at the Diners, including bussers, cooks, and kitchen staff workers.

53. At all times relevant to this Complaint, Defendants used similar pay practices at the Diners to pay these employees.

### *Bussers*

54. At times relevant to this Complaint, Defendants employed at least 18 employees as bussers at the Diners.

55. Among other tasks, bussers delivered food to customers' tables.

56. At each of the Diners, bussers regularly worked approximately 50 to 60 hours per week, and occasionally more.

57. At each of the diners, Defendants paid their bussers fixed weekly salaries ranging from approximately $400 to $600 per week for all hours worked during the workweek.

58. These fixed weekly salaries typically did not change regardless of the number of overtime hours bussers worked each week.

59. Defendants did not pay their bussers any additional premiums of one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek.

60. Defendants engaged in the practices described in the preceding paragraphs 54 through 59 at all relevant times since at least November 2014 and, upon information and belief, these practices may be continuing.

*Cooks*

61. At times relevant to this Complaint, Defendants employed at least 32 employees as cooks at the Diners.

62. Among other tasks, cooks prepared food, plated meals, and packaged meals for delivery.

63. Cooks regularly worked between 50 to 60 hours per week, and occasionally more.

64. Defendants paid their cooks fixed weekly salaries ranging from approximately $350 to $1,000 per week for all hours worked during the workweek.

65. These fixed weekly salaries typically did not change regardless of the number of overtime hours cooks worked each week.

66. Defendants did not pay their cooks any additional premiums of one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek.

67. Defendants engaged in the practices described in the preceding paragraphs 61 through 66 at all relevant times since at least November 2014 and, upon information and belief, these practices may be continuing.

*Dishwashers*

68. At times relevant to this Complaint, Defendants employed at least 12 employees as dishwashers at the Diners.

69. Among other tasks, dishwashers washed dishes and cleaned the kitchen.

70. Dishwashers regularly worked between 50 to 60 hours per week, and occasionally more.

71. Defendants paid their dishwashers fixed weekly salaries ranging from approximately $500 to approximately $530 per week for all hours worked during the workweek.

72. These fixed weekly salaries typically did not change regardless of the number of overtime hours dishwashers worked each week.

73. Defendants did not pay their dishwashers any additional premiums of one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek.

74. Defendants engaged in the practices described in the preceding paragraphs 68 through 73 at all relevant times since at least November 2014 and, upon information and belief, these practices may be continuing.

**Defendants' Unlawful Recordkeeping Practices**

75. For WILLISTON and TOWERS, Defendants failed to make or maintain any records of employees' hours worked or wages paid for the period of at least November 2014 to November 2015.

76. During its investigation of the Diners, the U.S. Department of Labor, Wage and Hour Division ("WHD") repeatedly requested that Defendants produce records of employees' hours worked and wages paid for the period November 2014 to December 2015 in accordance with 29 U.S.C. § 211(a) and (c).

77. Defendants never provided any time or payroll records for WILLISTON or TOWERS for the period November 2014 to December 2015.

78. During the year 2016, Defendants maintained electronic records of employees' hours worked at each of the Diners.

79. These electronic records generally accurately reflect employees' hours worked each day.

80. During this same time period, however, Defendants created handwritten payroll documents designed to falsely suggest that Defendants complied with the overtime requirements of the Act.

81. Defendants' handwritten payroll records significantly understate the number of hours worked by employees.

82. These handwritten payroll documents also do not accurately reflect the total wages that Defendants paid employees each week.

83. For WILLISTON and OLD WESTBURY, these handwritten payroll records falsely record that dishwashers, cooks, and bussers were paid an hourly wage with overtime pay.

84. In fact, dishwashers, cooks, and bussers at each of the Diners were paid flat salaries without additional overtime premiums for hours over 40.

85. During at least the year 2016, Defendants also issued pay stubs to some employees who received check payments.

86. While Defendants' electronic time records routinely reflect that employees worked between 50 and 60 hours each week, Defendants' pay stubs typically—and falsely—state that the vast majority of dishwashers, cooks, and bussers worked a maximum of 40 hours each week.

87. Nor do Defendants' pay stubs accurately reflect employees' actual wages.

88. Defendants engaged in the practices described in the preceding paragraphs 75 through 87 at all relevant times since at least November 2014 and, upon information and belief, these practices may be continuing.

### Defendants' Practices Have Been Willful

89. As described herein, Defendants' actions have been willful.

90. Defendants have been aware of the overtime and recordkeeping requirements of the Act since at least 2004.

91. In 2004, WHD investigated Defendant SPIROS DIMAS and SAJE Food Corp., the corporate predecessor to Defendant WILLISTON.

92. In this investigation, WHD concluded that several employees were paid a fixed straight time rate for all hours worked without the requisite overtime premiums.

93. WHD also concluded that SPIROS DIMAS and SAJE Food Corp. failed to maintain proper payroll records.

94. SPIROS DIMAS and SAJE Food Corp. paid more than $13,000 in back wages to resolve this 2004 investigation.

95. In May 2013, WHD visited OLD WESTBURY and provided Defendant DIMAS SPIROS with publications that informed Defendants of their duty to comply with the FLSA.

Defendants also received publications detailing their duty to comply with the requirements of the FLSA.

## FIRST CAUSE OF ACTION

### Violations of Sections 7(a) and 15(a)(2) of the FLSA: Failure to Pay Overtime Premiums

96. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 through 95 of the Complaint.

97. Defendants in many workweeks have willfully violated the provisions of Section 7 of the FLSA by employing their employees in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than those prescribed in Section 7 of the Act, without compensating the employees for their employment in excess of the prescribed hours at rates not less than one and one-half times the regular rates at which they were employed.

98. As set forth in paragraphs 1 through 95 above, at all times relevant to this Complaint, the bussers, cooks, and dishwasher employees regularly worked in excess of forty hours during any given workweek.

99. Therefore, Defendants are liable for unpaid overtime compensation and an equal amount of liquidated damages under Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid overtime compensation and prejudgment interest on said unpaid overtime compensation under Section 17 of the Act.

## SECOND CAUSE OF ACTION

### Failure to Keep Accurate Records

100. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 through 95 of the Complaint.

101. Defendants have willfully violated the provisions of sections 11(c) of the FLSA in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of their employment as prescribed by the Regulations issued and found at 29 C.F.R. Part 516. More specifically, as set forth in paragraphs 1 through 95 above, Defendants failed to make and maintain adequate and accurate records of many of their employees' actual daily and weekly hours of work, rates of pay, and total weekly payments.

**WHEREFORE**, cause having been shown, Plaintiff respectfully prays for judgment against Defendants providing the following relief:

1. An injunction issued pursuant to Section 17 of the Act permanently restraining Defendants, their officers, agents, servants, employees, and those persons in active concern or participation with Defendants, from violating the provisions of Section 7 and Section 11(c) of the Act;

2. An order pursuant to Section 16(c) of the Act finding Defendants liable for unpaid overtime compensation found due Defendants' employees listed on the attached Exhibit A and an equal amount of liquidated damages (additional minimum wage, overtime compensation, and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the period covered by this Complaint); or

3. In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid overtime compensation found due Defendants' employees and prejudgment interest

computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

    4.    An order compelling Defendants to reimburse the Secretary for the costs of this action; and

    5.    An order granting such other relief as the Court may deem necessary or appropriate.

DATED:    November 30, 2017
              New York, New York

NICHOLAS C. GEALE
Acting Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

 s/ Elena Goldstein
ELENA GOLDSTEIN
Senior Trial Attorney

U.S. Department of Labor
Office of the Regional Solicitor
201 Varick Street, Room 983
New York, NY 10014
(646) 264-3686
(646) 264-3660 (fax)
goldstein.elena@dol.gov
NY-SOL-ECF@dol.gov

*Attorneys for Plaintiff*
*Secretary of Labor*